UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRENDA KELLY,<br><br>                      **Plaintiff,**<br><br>         - against -<br><br>SCHENKER AMERICAS, INC. and HESSEL<br>VERHAGE in his individual capacity,<br><br>                    **Defendants.** | Case No.:<br><br>__COMPLAINT__<br><br>__JURY TRIAL DEMANDED__ |

Plaintiff, **BRENDA KELLY**, by and through her attorneys, **ZABELL & COLLOTTA, P.C.**, complains and alleges as follows:

## I.    PRELIMINARY STATEMENT

1.    For over twenty-five (25) years, **BRENDA KELLY** ("Plaintiff"), faithfully and dutifully served as Executive Assistant to each and every one of the ten (10) CEO's of Defendant **SCHENKER AMERICAS, INC.** ("Schekner"), that held the position during her tenure. Despite her loyalty and tireless work ethic, Defendant Schenker consistently took advantage of Plaintiff in violation of various federal and state labor laws throughout her employment, and similarly violated federal and state anti-discrimination laws when they unceremoniously terminated her employment and replaced her with a younger, non-disabled employee.

2.    Defendant Schenker, amongst other acts and omissions discussed below, failed to compensate Plaintiff, a non-exempt employee, at a rate not less than time and one half her regular rate of pay for hours worked in excess of forty (40) per week. The net effect being Defendant Schenker denied Plaintiff basic rights and entitlements which

are guaranteed under Federal, State, and Local labor laws.

3.     Accordingly, Ms. Kelly brings this action seeking monetary damages, declaratory relief, and affirmative relief based upon Defendant Schenker's violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, *et seq.*; New York State Department of Labor Regulations ("NYDOL Regs"), N.Y.C.R.R. § 142-2.2; and other appropriate rules, regulations, statutes and ordinances.

4.     Therefore, Ms. Kelly alleges, pursuant to the FLSA and NYLL, that she is entitled to recover from Defendant Schenker overtime compensation for all hours worked in excess of forty (40) hours per week; (2) liquidated damages; and (3) an award of attorneys' fees and costs.

5.     In addition to her wage and hour claims, Plaintiff was subject to unlawful, age-based and disability-based discrimination in violation of The New York State Human Rights Law, N.Y. Executive Law § 296, et seq. ("NYSHRL").[1] Plaintiff further alleges that Defendant **HESSEL VERHAGE** ("Verhage") aided and abetted the unlawful discriminatory conduct to which she was subjected.

## II.     JURISDICTION & VENUE

6.     This Court maintains jurisdiction over the claims presented herein pursuant to 28 U.S.C. §§ 1331 and 1367.

7.     This Court maintains jurisdiction over all state law claims brought in this

---

[1] Plaintiff has also filed a claims of age-based discrimination under the Age Discrimination in Employment Act and disability-based discrimination under the Americans with Disabilities Act with the U.S. Equal Employment Opportunity Commission ("EEOC"). Plaintiff's claims are currently pending, and she has not yet been issued a Right to Sue letter by the EEOC. Plaintiff intends to further amend her Complaint once the Right to Sue Letter is issued.

action pursuant to 28 U.S.C. § 1367.

8.     This action properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the conduct alleged herein occurred within the Suffolk and Nassau County.

9.     This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### III.   PARTIES

10.    Plaintiff, **BRENDA KELLY** ("Plaintiff"), is a domiciliary of the State of New York residing in Nassau County.

11.    At all times relevant to the Complaint, Plaintiff was an "employee" of Defendant Schenker within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), Section 190(2) of the NYLL, N.Y. Lab. Law § 190(2), and NYSHRL § 292(6).

12.    Defendant Schenker is a foreign corporation with offices presently located in Melville, New York.

13.    At all times relevant herein, Defendant Schenker acted as an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), Section 190(3) of the NYLL, N.Y. Lab. Law § 190(3), and NYSHRL § 292(5).

14.    At all times relevant herein, the Schenker is an "enterprise" and performed activities for a business purpose within the meaning of 29 U.S.C. §§ 203(r)(1) and (r)(2).

3

15.     At all times relevant herein, Schenker employed more than two (2) employees and had a gross annual dollar volume of sales made or business done in an amount not less than five hundred thousand dollars ($500,000.00).

16.     At all times relevant herein, Defendant Schenker employed more than two (2) employees engaged in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

17.     At all times relevant herein, Defendant Schenker employed employees, including Plaintiff, who regularly were and are presently engaged in commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. § 2073(b), (g), (i), and (j) in connection with the operation of Schenker as a private organization.

18.     Upon information and belief, at all times relevant herein, Defendant Verhage is a "person" pursuant to Section 219(1) of the NYSHRL and a resident of the State of Illinois.

19.     Upon information and belief, Defendant Verhage served as Defendant Schenker's CEO from August 2019 through the present and is being sued in his individual capacity as an aider and abettor under NYSHRL §296(b).

## IV.    FACTUAL ALLEGATIONS

*Plaintiff's Employment*

20.     Plaintiff was hired as an employee by Schenker and commenced employment on or about October 30, 1995.

21.     Plaintiff was terminated from employment on January 8, 2021.

22.     Plaintiff's date of birth is March 17, 1963.

23.     For the duration of Plaintiff's employment, she held the position of Executive Assistant to the CEO/President.

24.     Plaintiff was also assigned other temporary titles or duties during her employment as the needs of the Company have demanded.

25.     Plaintiff served as the Executive Assistant to ten (10) different CEOs/Presidents during the twenty-five (25) years she worked for Schenker.

26.     Plaintiff faithfully and dutifully served each and every one.

27.     Plaintiff's duties as Executive Assistant to the CEO include, but are not limited to, drafting and responding to correspondence on behalf of the CEO, liaising with the Senior Management Team and traveling with them for Quarterly meetings, making the CEO's travel arrangements as well as being available at off hours to make last minute travel arrangements due to cancelations, delays, etc., controlling/scheduling the CEO's calendar, answering incoming phone calls to the CEO, and preparing the CEO's expense reports.

28.     At various points in time, Plaintiff was also required to babysit the CEO's children.

29.     Plaintiff also regularly scheduled the conference calls between Defendant Schenker's offices and the offices of its German parent corporation.

30.     Plaintiff typically worked from 8:30 a.m. or 9:00 a.m. to 7:30 or 8:00 p.m. Monday through Friday.

31.     Plaintiff was required to begin working at 7:00 a.m. if Defendant Schenker had a conference call scheduled with its German parent corporation.

32.     As demanded, Plaintiff would work as late until midnight or on Saturdays and Sundays.

33.     In or around 2016, Schenker's headquarters were moved from Freeport, New York to Miami, Florida.

34.     Plaintiff was tasked with the responsibility of finding temporary office space in Miami, Florida. This required long hours of work and intense manual labor to get the office set up.

35.     Plaintiff was also tasked with the responsibility of finding a permanent facility in Miami, Florida and organizing the move from the temporary facility to the permanent facility.  This again required Plaintiff to work extended hours and perform intense manual labor.

36.     Once space was found, Plaintiff was advised that she would be regularly working out of Schenker's Miami office.

37.     However, Plaintiff also needed to regularly travel to New York while the previous headquarters in Freeport, New York was prepared for sale.

38.     The Freeport, New York facility was sold in the summer of 2018.

39.     Accordingly, Plaintiff continued to maintain primary residence in New York.

40.     Plaintiff was required to maintain an apartment in Miami, Florida for the weeks she was required to work out of Schenker's Miami headquarters.

41.     Upon information and belief, other employees were permitted to stay in hotel rooms at Schenker's expense.

42.     From 2016 through the beginning of the COVID-19 pandemic, Plaintiff primarily worked out of Schenker's Miami offices.

43.     Beginning in or around March 2020, Plaintiff began to work remotely.

44.     However, Plaintiff offered to travel to any of the front-line sites where help was needed and remained available to do so the entire time.

45.     This arrangement continued through Plaintiff's termination on January 8, 2021.

*Plaintiff's Disability-Based and Age-Based Discrimination Claims*

46.     Plaintiff was in an automobile accident in or around May 2016 that caused her severe injuries.

47.     In or around May 2018 Plaintiff underwent spinal fusion surgery.

48.     While her surgeons recommended that she take three months of rest, Plaintiff only missed one month of work because she was needed in advance of the sale of the Freeport facility.

49.     Following the surgery, Plaintiff was required to wear a back brace and ankle-foot orthosis as needed.

50.     Furthermore, there have been periods of time where Plaintiff has been required to use the assistance of a cane to walk.

51.     Plaintiff did not allow her injuries or condition to limit her work.

52.     Indeed, Plaintiff continued to travel between Miami and New York on a regular basis.

53.     Plaintiff regularly wore her back brace during travel between Miami and New York.

54.     Plaintiff's injuries and conditions eventually worsened in 2020.

55.     Medical scans performed in October 2020 showed that discs in Plaintiff's spine were slipping.

56.     Specifically, stability of L4-L3, and L5-S1 of Plaintiff's spine levels were found to be grossly unstable causing unbearable pain when the discs slipped out of place until they returned back to place.

57.     During 2020 Plaintiff consulted with her doctors regarding possible treatments.

58.     In October 2020, it was recommended that Plaintiff undergo another spinal surgery.

59.     Plaintiff's spinal surgery was ultimately approved by Schenker's self-insured health plan and was scheduled for November 4, 2020.

60.     Plaintiff subsequently canceled her surgery to attempt less-invasive treatments.

61.     On October 14, 2020, Plaintiff received a nerve block injection.

62.     On October 22, 2020, Plaintiff received a second nerve block injection.

63.     The nerve block injections were largely unsuccessful.

64.   Accordingly, in or around the second week of December it was determined Plaintiff would need to proceed with the spinal surgery.

65.   The surgery was once again approved by Schenker's self-insured health plan.

66.   Following, a pre-surgical visit on January 7, 2021, Plaintiff's surgeon indicated she would be disabled effective January 8, 2021 with surgery to occur on January 20, 2021.

67.   Plaintiff submitted a medical short term disability request on January 8, 2021 at 10:00 a.m., as soon as ADP and Met-Life opened for business in accordance with company guidelines.

68.   Plaintiff subsequently sent confirmation of her request by e-mail to Human Resources Benefits Department, Stacey Brown, and Hessel Verhage.

69.   That same day Plaintiff was contacted by Ms. Brown, who stated she had been attempting to speak with her.

70.   Plaintiff advised Ms. Brown that she was on an approved bereavement leave from January 4, 2021, through January 7, 2021 to attend the services of her father-in-law who had just passed away from COVID-19.

71.   Plaintiff also advised Ms. Brown that Mr. Verhage had approved additional Paid Time Off from January 8, 2021 through January 11, 2021 through Schenker's ADP vacation request electronic platform because her mother-in-law remained hospitalized with COVID-19 and she had to tend to personal matters.

72.   Ms. Brown advised that Plaintiff that they must immediately speak.

73.   Concerned by her messages, Plaintiff tried to contact Ms. Brown.

74.   Ms. Brown then proceeded to contact Plaintiff *via* FaceTime.

75.   Ms. Brown advised Plaintiff that her position was being eliminated in a restructuring and that she was being terminated from employment with Schenker.

76.   Plaintiff has since learned that her position was not eliminated.

77.   Rather, Plaintiff was replaced by a woman named Kathryn Riffner, who now presently serves as the Executive Assistant to the CEO.

78.   Upon information and belief, Ms. Riffner is between twenty-eight (28) and thirty-three (33) years old.

79.   Plaintiff's immediate concern upon learning of her termination was to inquire about her healthcare coverage as she was scheduled for surgery on January 20, 2021, less than two (2) weeks later.

80.   Ms. Brown represented to Plaintiff that her healthcare coverage would continue through the end of the month.

81.   However, Ms. Brown's representations were not true.

82.   Plaintiff soon learned in the days leading up to her surgery that Schenker had terminated her health care coverage effective January 8, 2021.

83.   Plaintiff only became aware of this fact when her healthcare providers informed her that they would be unable to have her undergo pre-surgical procedures.

84.   Furthermore, Schenker failed to issue her a COBRA notice before her scheduled surgery.

85.   Accordingly, Plaintiff took it upon herself to secure COBRA coverage so she could proceed with her surgery.

86.     Following her surgery, Plaintiff has attempted to file for New York State disability benefits to supplement her income while she remains incapacitated.

87.     However, Plaintiff has been unable to receive benefits because of Schenker's interference with her claims.

*Wage and Hour Allegations*

88.     At all times relevant herein, Plaintiff performed non-exempt duties.

89.     Specifically, Plaintiff's regular duties include, but are not limited to, drafting and responding to correspondence on behalf of the CEO, liaising with the Senior Management Team and traveling with them for Quarterly meetings, making the CEO's travel arrangements as well as being available at off hours to make last minute travel arrangements due to cancelations, delays, etc., controlling/scheduling the CEO's calendar, answering incoming phone calls to the CEO, and preparing the CEO's expense reports.

90.     At all times relevant herein, Plaintiff was paid a salary, regardless of the number of hours actually worked.

91.     At all times relevant herein, Plaintiff regularly worked in excess of forty (40) hours per week.

92.     In fact, Plaintiff typically worked no less than fifty-five (55) hours each work.

93.     Despite performing non-exempt duties, Defendant Schenker misclassified Plaintiff as an overtime exempt employee.

94.    Defendant Schenker failed to properly compensate Plaintiff at a rate of one and a half (1.5) times her regular rate of pay for hours worked in excess of forty (40) hours each week.

95.    Accordingly, Plaintiff is entitled to unpaid overtime wages for not less than fifteen (15) hours each week during the statutory periods allowed under the Fair Labor Standards Act and New York Labor Law.

96.    At all times relevant herein, Plaintiff performed the essential functions of her position in a satisfactory manner and has satisfied all conditions precedent to payment in accordance with the established terms and conditions of her employment.

97.    During Plaintiff's tenure, Defendant Schenker also failed to provide her with written notice of her wage rate, in accordance with the New York State Wage Theft Prevention Act, NYLL § 195(1).

98.    In addition, Defendant Schenker failed to provide Plaintiff with wage statements, in accordance with NYLL § 195(3).

*Breach of Contract Allegations*

99.    On or around July 16, 2002, Plaintiff and Defendant agreed, in writing, that she would receive unconditional severance upon her separation from employment.

100.   Specifically, Plaintiff was advised in writing that if her employment was terminated without six (6) months advance notice, she would be entitled to severance in the amount of six (6) months of her annual base salary, a pro rata bonus payment, and health insurance costs for six (6) months.

101.   Defendant Schenker terminated Plaintiff's employment without providing her six (6) months advance notice.

102.   Accordingly, Plaintiff is entitled to her unconditional severance pay.

103.   Defendant Schenker failed to issue Plaintiff her unconditional severance pay upon her termination.

104.   Rather, Defendant Schenker has advised Plaintiff that her receipt of severance pay is conditioned upon entering into a Severance Agreement that includes, amongst, other restrictive covenants, a general release of all claims against Defendant Schenker.

105.   Defendant Schenker has breached the Contract it entered into with Plaintiff by failing to issue her unconditional severance pay as provided for in the July 16, 2002 Agreement.

## V.   CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (DEFENDANT SCHENKER)

106.   Plaintiff repeats and realleges every preceding allegation as if set forth fully herein.

107.   Defendant Schenker has been and remains an employer engaged in interstate commerce and/or the production of goods for commerce under the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

108.   Defendant Schenker was required to pay Plaintiff no less than 1.5 times the regular rate at which she was employed for all hours worked in excess of forty (40)

hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

109.   At all relevant times, Defendant Schenker failed to pay Plaintiff the proper overtime compensation for her hours worked in excess of forty (40) hours per workweek.

110.   Defendant Schenker was aware or should have been aware that the practices described in this Complaint were unlawful, making its violations willful or reckless.

111.   Defendant Schenker has not made a good faith effort to comply with the FLSA with respect to Plaintiff's compensation.

112.   As a result of Defendant Schenker's FLSA violations, Plaintiff has suffered damages by being denied an overtime premium in accordance with the FLSA in amounts to be determined at trial, and is entitled to recover of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CAUSE OF ACTION**
**FAILURE TO PAY OVERTIME UNDER**
**THE NEW YORK LABOR LAW**
**(DEFENDANT SCHENKER)**

113.   Plaintiff repeats and realleges every preceding allegation as if set forth fully herein.

114.   Under the New York Labor Law and supporting New York State Department of Labor Regulations, Defendant Schenker was required to pay Plaintiff 1.5 times her regular rate of pay for all hours she worked in excess of forty (40) per workweek.

115.   Defendant Schenker failed to pay Plaintiff the overtime wages to which she

14

was entitled, violating N.Y. Lab Law § 650.

116.   Defendant Schenker willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff overtime.

117.   Due to Defendant Schenker's Labor Law violations, Plaintiff is entitled to recover from Defendant Schenker unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post- judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**THIRD CAUSE OF ACTION**
**FAILURE TO PROVIDE 195.1 NOTICE UNDER**
**THE NEW YORK LABOR LAW**
**(DEFENDANT SCHENKER)**

118.   Plaintiff repeats and realleges every preceding allegation as if set forth fully herein.

119.   Defendant Schenker willfully failed to supply Plaintiff with the required Notice and Acknowledgement of Pay Rate and Payday under § 195.1(a) within ten (10) business days of each change in her rate of pay.

120.   Due to Defendant Schenker's violations of N.Y. Lab. Law § 195.1, Plaintiff is entitled to recover from Defendant Schenker $50.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab. Law § 198(1)-b (2016).

**FOURTH CAUSE OF ACTION**
**FAILURE TO PROVIDE 195.3 WAGE STATEMENT UNDER**
**THE NEW YORK LABOR LAW**
**(DEFENDANT SCHENKER)**

121.   Plaintiff repeats and realleges every preceding allegation as if set forth fully

15

herein.

122. Defendant Schenker willfully failed to supply Plaintiff with an accurate wage statement with each payment of wages, violating N.Y. Lab Law § 195.3.

123. Due to Defendant Schenker's violations of N.Y. Lab Law § 195.3, Plaintiff is entitled to recover from Defendant Schenker $250.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab Law § 198(1)-d (2016).

**FIFTH CAUSE OF ACTION**
**DISCRIMINATION ON THE BASIS OF AGE**
**UNDER THE NYSHRL**
**(DEFENDANT SCHENKER)**

124. Plaintiff repeats and realleges every preceding allegation as if set forth fully herein.

125. Plaintiff has been discriminated against by Defendant Schenker on the basis of her age in violation of the NYSHRL in that Plaintiff was terminated from her employment in favor of a younger replacement.

126. As a proximate result of Defendant Schenker's discrimination, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings and other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

127. As a further proximate result of Defendant Schenker's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

128. Defendant Schenker's conduct was committed with conscious disregard of

16

Plaintiff's rights.

129.   Plaintiff is entitled to an award of injunctive and equitable relief and an award of compensatory damages from Defendant Schenker in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**DISCRIMINATION ON THE BASIS OF DISABILITY**
**UNDER THE NYSHRL**
**(DEFENDANT SCHENKER)**

130.   Plaintiff repeats and realleges every preceding allegation as if set forth fully herein.

131.   Plaintiff has been discriminated against by Defendant Schenker on the basis of her disability status in violation of the NYSHRL in that Plaintiff was terminated from her employment in favor of a non-disabled replacement.

132.   Plaintiff has been discriminated against by Defendant Schenker on the basis of her disability status in violation of the NYSHRL in that Plaintiff was denied a reasonable accommodation.

133.   As a proximate result of Defendant Schenker's discrimination, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings and other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

134.   As a further proximate result of Defendant Schenker's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

135.   Defendant Schenker's conduct was committed with conscious disregard of

Plaintiff's rights.

Plaintiff is entitled to an award of injunctive and equitable relief and an award of compensatory damages from Defendant Schenker in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**DISCRIMINATION ON THE BASIS OF AGE**
**UNDER THE NYSHRL – AIDER AND ABETTOR LIABILITY**
**(DEFENDANT VERHAGE)**

136.   Plaintiff repeats and realleges each and every allegation contained herein.

137.   The foregoing acts pleaded above were aided and abetted by Defendant Verhage in violation of Section 296(6) of the NYSHRL.

138.   Defendant Verhage knew or was otherwise aware of the discrimination faced by Plaintiff and took no corrective action to address the problem.

139.   As a proximate result of Defendant Verhage's actions, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

140.   As a further proximate result of Defendant Verhage's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses, all contributing to Plaintiff's damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**DISCRIMINATION ON THE BASIS OF DISABILITY**
**UNDER THE NYSHRL – AIDER AND ABETTOR LIABILITY**
**(DEFENDANT VERHAGE)**

141.   Plaintiff repeats and realleges each and every allegation contained herein.

142.   The foregoing acts pleaded above were aided and abetted by Defendant Verhage in violation of Section 296(6) of the NYSHRL.

143.   Defendant Verhage knew or was otherwise aware of the discrimination faced by Plaintiff and took no corrective action to address the problem.

144.   As a proximate result of Defendant Verhage's actions, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, other employment benefits, all to Plaintiff's damage in an amount to be determined at trial. As a further proximate result of Defendant Verhage's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses, all contributing to Plaintiff's damages in an amount to be determined at trial.

NINTH CAUSE OF ACTION
ERISA – 29 U.S.C. 1132(a)(1)(b)
(DEFENDANT SCHENKER)

145.   Plaintiff repeats and realleges each and every allegation contained herein.

146.   Defendant Schenker maintains a self-insured healthcare plan for its employees.

147.   Schenker's healthcare plan is governed by ERISA and is an "employee welfare benefit plan" as the term is defined in Section 1002 (1), Chapter 18, Title 29 of the United States Code.

148.   Plaintiff was a "participant" in the health care plan, as the term is defined by Section 1002 (7), Chapter 18, Title 29 of the United States Code.

149.   Plaintiff was a participant in Defendant Schenker's health care plan when she

was approved for surgery to repair damage to her spine.

150.   Defendant Schenker's health care plan approved Plaintiff's surgery.

151.   Less than two (2) weeks prior to receiving surgery, Plaintiff was involuntarily terminated from Defendant Schenker's health care plan.

152.   This occurred despite Defendant Schenker expressly advising Plaintiff she would be eligible to receive benefits under the plan through January 31, 2021.

153.   Defendant Verhage knew or was otherwise aware of the discrimination faced by Plaintiff and took no corrective action to address the problem.

**TENTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(DEFENDANT SCHENKER)**

154.   Plaintiff repeats and realleges each and every allegation contained herein.

155.   Plaintiff and Defendant Schenker entered into a Contract under which Plaintiff could become eligible for unconditional severance.

156.   Defendant Schenker terminated Plaintiff's employment without six (6) months advance notice.

157.   Accordingly, Plaintiff is contractually entitled to severance pay in accordance with the Parties' agreement.

158.   However, Defendant Schenker has failed to issue to Plaintiff the unconditional severance pay to which she is entitled.

159.   Accordingly, Defendant Schenker stands in breach of the Parties' Contract.

160.   Therefore, Plaintiff is entitled to damages to recover the severance pay to which she is entitled.

## DEMAND FOR TRIAL BY JURY

161.   Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact this Complaint raises.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests this Court grant the following relief:

i.   A declaratory judgment stating that the practices complained of herein are each unlawful under the FLSA and the NYLL;

ii.   An injunction against Defendant Schenker and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, preventing them from engaging in each of the unlawful practices, policies and patterns set forth herein;

iii.   An award to Plaintiff for earned but unpaid overtime under the FLSA and the NYLL;

iv.   A monetary award to Plaintiff for Defendant Schenker's failure to provide the N.Y. Lab. Law § 195.1 Notice;

v.   A monetary award to Plaintiff commensurate with Defendant Schenker's failure to provide the N.Y. Lab. Law § 195.3 Statements;

vi.   An award of liquidated damages as a result of Defendant Schenker's Labor Law violations;

vii.   An award of liquidated damages as a result of Defendant Schenker's

willful FLSA violations;

viii. An award, inclusive of compensatory damages, emotional damages, and punitive damages, in an amount to be determined at trial for Defendants' violation of the NYSHRL's anti-discrimination provisions.

ix. An award of all benefits to which Plaintiff would have been afforded under Schenker's health care plan but for their unlawful involuntary termination of Plaintiff's participation;

x. An award in an amount equal to the severance to which Plaintiff is contractually entitled.

xi. An award of pre-judgment and post-judgment interest;

xii. An award of costs and expenses of this action, together with reasonable attorneys' fees and costs; and

xiii. Such other and further relief as this Court deems just and proper.

Dated: February 18, 2021
Bohemia, New York

Respectfully submitted,

ZABELL & COLLOTTA, P.C.
*Attorneys for Plaintiff*

By: _____
Saul D. Zabell, Esq.
Ryan M. Eden, Esq.
1 Corporate Drive, Suite 103
Bohemia, New York 11716
T: (631) 589-7242
F: (631) 563-7475
SZabell@laborlawsny.com
REden@laborlawsny.com